THE UNITED STATES DISTRICT COURT
FOR THE EASTERNDISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| BRITTANEY MOORE-BAUTISTA, | § | Case No.: 6:23-cv-273 |
| | § | |
| *Plaintiff*, | § | |
| vs. | § | |
| | § | |
| VISIONS GENTLEMEN'S CLUB & INVERTED | § | |
| ART GALLERY, HEATHER LYNN WELLS, | § | |
| BRITTINI MARSHELL SEALEY and | § | |
| MARSHALL SEALEY, | § | |
| *Defendants*. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff, BRITTANEY MOORE-BAUTISTA ("Plaintiff") alleges the following upon information and belief, based upon investigation of counsel, and personal knowledge:

I.  **NATURE OF THE ACTION**

1. Plaintiff alleges causes of action against Defendants VISIONS GENTLEMEN'S CLUB & INVERTED ART GALLERY, HEATHER LYNN WELLS and MARSHALL SEALEY ("Defendants") for damages resulting from Defendants' evading the mandatory minimum wage and tip provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*("FLSA").

2. Defendants own and operate a strip club named Visions Gentlemen's Club & Inverted Art Gallery ("Visions" or the "Club"). Plaintiff's causes of action arise from Defendants' willful actions while Plaintiff was employed by Defendants. Plaintiff Brittaney Moore-Bautista was employed from approximately 2019 to 2020 and September 2021 through February 28, 2023. Throughout her employment with Defendants, Plaintiff was denied minimum wage payments and had her tips taken, as part of Defendants' scheme to classify Plaintiff and other dancers/entertainers as "independent contractors."

3. Plaintiff worked at Defendants' principal place of business located at 8542 Tx-31, Tyler, Texas 75705.

4. Defendants failed to pay Plaintiff minimum wages for all hours worked in violation of 29 U.S.C. § 206 of the FLSA. Furthermore, Defendants' practice of taking tips, in the form of coerced tipouts, mandatory fees, and mandatory fines imposed on dancers, like Plaintiff, violates FLSA 29 U.S.C. § 203(m). Likewise, such actions cause dancer's compensation to fall below the minimum, mandatory wage, in violation of 29 U.S.C. § 206. Forcing or coercing dancers to tip out Club staff violates 29 C.F.R. § 531.5 which "prohibits an arrangement that tends to shift part of the employer's business expense to the employees." *Ramos-Barrientos v. Bland*, 661 F.3d 587, 594-95 (11th Cir. 2011). Violations of 29 C.F.R. § 531.5 are actionable when they cause an employee's compensation to fall below the mandatory minimum wage, in violation of 29 U.S.C. § 206. A required tip to Club staff each time Plaintiff worked functioned as a subsidy to Defendants. Defendants had to pay their staff less because they were being tipped by the entertainers.

5. As a result of Defendants' violations, Plaintiff seeks to recover damages for failure to pay minimum wage and violations of 29 U.S.C. § 203(m), including all tips, fees, or fines taken from Plaintiff, liquidated damages, interest, and attorneys' fees and costs provided by 29 U.S.C. § 216(b).

**II.     PARTIES**

7. Plaintiff is an individual adult resident of the State of Texas. Furthermore, Plaintiff was employed by Defendants and qualifies as "employees" of Defendants as defined by the FLSA, 29 U.S.C. § 203(e)(1).

8. VISIONS GENTLEMEN'S CLUB ("Visions" or the "Club") is a Texas

Corporation with its principal place of business at 8542 Tx-31, Tyler, Texas 75705. At all times mentioned herein, they were an "employer" or "joint employer" as defined by the FLSA, 29 U.S.C. § 203(d) and (g). Visions may be served at its principal place of business, 8542 Tx-31, Tyler, Texas 75705.

9. Defendant HEATHER LYNN WELLS ("Wells") is/was a manager of Visions during the Relevant Period who executed the polices regarding payment to dancers and management of dancers, including Plaintiff. She can be served at her place of employment at 8542 Tx-31, Tyler, Texas 75705 or wherever she may be found.

10. Defendant BRITNI MARSHELL SEALEY ("Sealey") is/was the owner of Visions during the Relevant Period who executed the policies regarding payment to dancers and management or dancers, including Plaintiff. She may be served at 8542 Tx-31, Tyler, Texas 75705 or wherever she may be found.

11. Defendant MARSHALL SEALEY ("Marshall") is/was the owner of Visions during the Relevant Period who executed the policies regarding payment to dancers and management or dancers, including Plaintiff. He may be served at 8542 Tx-31, Tyler, Texas 75705 or wherever he may be found.

12. Marshall, Wells and/or Sealey directly or indirectly on behalf of Visions, and, at all times mentioned herein were "employer(s)" or "joint employer(s)" of Plaintiff within the meaning of the FLSA. They exerted operational and management control over Visions, including day to day management. They were, and are, frequently present at, owned, directed, controlled and managed the operations at Visions. They also controlled the nature, pay structure, and employment relationship of Plaintiff and the FLSA Class members. Marshall, Wells and/or Sealey had at all times relevant to this lawsuit, the authority to hire and fire

employees at Visions, the authority to direct and supervise the work of employees, the authority to sign on the businesses' checking accounts, including payroll accounts, and the authority to make decisions regarding employee compensation and capital expenditures. Additionally, they were responsible for the day-to-day affairs of Visions. In particular, they were responsible for determining whether Visions complied with the FLSA.

13. At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(r)(1) of the FLSA because they have had employees at their club engaged in commerce, which has travelled in interstate commerce, including but not limited to food service. Moreover, because of Defendants' interrelated activities, they function in interstate commerce. 29 U.S.C. § 203(s)(1).

14. Furthermore, Defendants have had, and continue to have, an annual gross business volume in excess of the statutory standard.

15. Plaintiff is informed and believes that, at all relevant times herein, the Club engaged in acts alleged herein and/or condoned, permitted, authorized, and/or ratified the conduct of its owners, employees, representatives, and agents and are vicariously or strictly liable for the wrongful conduct of its employees and agents as alleged herein.

16. At all material times during the three (3) years prior to the filing of this action, Defendants categorized all dancers/entertainers employed at Visions as "independent contractors" and have failed and refused to pay wages or compensation to such dancers/entertainers. Plaintiff was an individual employee who engaged in commerce or in the production of goods for commerce as required by the FLSA.

17. Plaintiff is informed and believes, and on the basis allege that, each of the Defendants acted, in all respects pertinent to this action, as the agent or employer of each other,

4

and carried out a joint scheme, business plan, or policy in all respect thereto and, therefore, the acts of each of these Defendants are legally attributable to the other Defendants, and that these Defendants, in all respects, acted as employers and/or joint employers of Plaintiff in that each of them exercised control over their wage payments and control over their duties.

18. Plaintiff is informed and believes, and on that basis alleges that, at all relevant times, each and every Defendants have been the agent, employee, representative, servant, master, employer, owner, agent, joint venture, and alter ego of each other and that each was acting within the course and scope of his or their ownership, agency, service, joint venture, and employment.

19. At all times mentioned herein, each and every Defendants were the successor of the other and each assumes the responsibility for the acts and omissions of all other Defendants.

### III. VENUE AND JURSIDICTION AND APPLICABLE LAW

20. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 because this action arises under the FLSA, 29 U.S.C. §§ 201, *et seq*.

21. Venue is proper in this District because all or a substantial portion of the events forming the basis of this action occurred in this District. Defendant's club is located in this District and Plaintiff worked in this District.

### IV. FACTUAL ALLEGATIONS

22. Defendants operate an adult-oriented entertainment facility located at 8542 TX-31, Tyler, Texas 75705. The following picture depicts the outside of the Club.



23.     At all times mentioned herein, Defendants were the "employer(s)" of Plaintiff as defined by the FLSA, 29 U.S.C. §203(m).

24.     At all times Plaintiff worked for Defendants in the three years prior to filing this Complaint (the Relevant Time), Defendants categorized all dancers/entertainers employed by Defendants as "independent contractors" and has failed and refused to pay wages to such dancers/entertainers.

25.     At all times during the Relevant Time, Defendants exercised a great deal of operational and management control over the subject club, particularly in the areas of terms and conditions of employment applicable to dancers and entertainers.

26.     Plaintiff Brittney Moore-Bautista began working as a dancer for Defendants in 2019 to 2020 and continued working in September 2021 through February 28, 2023.

27.     The primary duty of an entertainer is to dance and entertain customers and give them a good experience. Specifically, an entertainer performs stage and table dances, and entertains customers on an hourly basis. Stated differently, entertainers dance on stage, perform table dances, and entertain customers in VIP rooms, all while nude or semi-nude.

6

28. Plaintiff worked and performed at Visions multiple shifts per week. Plaintiff was an integral part of Defendants' business which operated solely as an adult-oriented entertainment facility featuring nude or semi-nude female entertainers. On its website, the Club prominently displays scantily clad women next to a tattooed man riding a motorcycle inside of the club, along with photographs of women wearing lingerie while riding a motorcycle, posing with an AR-15. The site also highlights its status of "TOTALLY NUDE BOYB," although misspelled, can be interpreted as: women who are employed as entertainers do not wear any clothing during business hours and customers may bring their own beverages to imbibe within the club.

29. Defendants did not pay entertainers and in fact took their tip money in the forms of fees, fines and other coerced/mandatory tip payments. Defendants forced dancers to keep all tips they received in an individual box controlled by Defendants during their shift. Defendants would then personally count the tips and take 35% of the she money earned during her shift. Dancers did not have the option to opt-out of this procedure. If dancers attempted to withhold the amount of earnings received from customers, management would fire them and kick them out of the club.

30. Defendants exercised significant control over Plaintiff during her shifts and required Plaintiff to work an entire shift. For example, if there were no male employees present in the main area of the club, dancers would be required to stay in the dressing room until one arrived so the male employee could assume their role as the "protector" of the women working. If Plaintiff did not come into work on a scheduled day, management would charge her a fee during her next shift. Defendants would fire dancers if they were found to have been partying on their days off from the club if management determined they could have been working instead.

Defendants controlled the means and manner in which Plaintiff could perform. For example, Plaintiff was required to participate in stage rotation. Defendants set the rates charged by Plaintiff for dances, including $20 minimum for an individual dance and $50 minimum for VIP room dances. It was mandatory for Plaintiff to report the dances completed for customers to management, who would then count the number of songs Plaintiff would dance to and calculate her earnings. Plaintiff was not allowed to preform using "floor work," meaning she was not allowed to lay on the floor for any part of her pole routine and needed to remain standing during its entirety. Defendants had the authority to suspend, fine, fire, or otherwise discipline entertainers for non-compliance with its rules regarding dancing, and actually did so.

31.     Although Defendants allowed entertainers to choose their own costumes, Defendants reserved the right to decide what a particular entertainer was allowed to wear on the premises and required dancer heels. Plaintiff typically expended approximately sixty (60) minutes of time each shift getting ready for work without being paid any wages for such time getting ready. Defendants did enforce the dress code on entertainers, to the extent such may have been required as a sexually oriented business by the City of Tyler and/or State of Texas, in addition to their own Club dress code for dancers.

32.     Plaintiff was compensated exclusively through tips from Vision's customers. That is, Defendants did not pay Plaintiff whatsoever for any hours worked at its establishment.

33.     Defendants also required Plaintiff to share their tips with Defendants and other non-service employees who do not customarily receive tips, including the managers, and disc jockey. Management would take 25% of Plaintiff's tips and the disc jockey would receive 10% of her tips, totaling to 35% of tips earned during a shift. If Plaintiff failed to tip the Club staff as expected, they would not be allowed to leave, not be allowed to come in for additional shifts

that week, or worse, fired from working at the Club. In this way, the tipouts Plaintiff paid to Club staff were forced and/or coerced, in violation of §203(m).

34. Defendants provided and paid for all advertising and marketing efforts undertaken on behalf of Defendants.

35. Defendants paid for the facility used as the Club, maintenance of the facility, the sound system, stages, lights, beverages, and inventory used at the facility.

36. Defendants made all hiring decisions regarding wait staff, security, entertainers, managerial, and all other employees on the premises.

37. Defendants' opportunity for profit and loss far exceeded Plaintiff's opportunity for profit and loss from work at the Club.

38. The position of entertainer requires no managerial skill of others, and requires little other skill or education, formal or otherwise. The only requirements to become an entertainer at are "physical attributes" and the ability to dance seductively. The amount of skill required is more akin to an employment position than that of a typical independent contractor.

39. Defendants failed to maintain records of wages, fines, fees, tips, and gratuities and/or service charges paid or received by Plaintiff, as was required by law. Furthermore, Defendant failed to maintain records of the coerced tips Plaintiff were forced to make to other employees of the Club, which was also required by law.

40. Federal law mandates that an employer is required to keep for three (3) years all payroll records and other records containing, among other things, the following information:

    a.    The time of day and day of week on which the employees' work week begins;

    b.    The regular hourly rate of pay for any workweek in which overtime compensations due under section 7(a) of the FLSA;

    c.    An explanation of the basis of pay by indicating the monetary amount paid

        on a per hour, per day, per week, or other basis;

d.     The amount and nature of each payment which, pursuant to section 7(e) of the FLSA, is excluded from the "regular rate";

e.     The hours worked each workday and total hours worked each workweek;

f.     The total daily or weekly straight time earnings or wages due for hours worked during the workday or workweek, exclusive of premium overtime compensation;

g.     The total premium for overtime hours. This amount excludes the straight-time earnings for overtime hours recorded under this section;

h.     The total additions to or deductions from wages paid each pay period including employee purchase orders or wage assignments;

i.     The dates, amounts, and nature of the items which make up the total additions and deductions;

j.     The total wages paid each pay period; and

k.     The date of payment and the pay period covered by payment. 29 C.F.R. 516.2, 516.5.

41.     Defendants have not complied with federal law and have failed to maintain such records with respect to Plaintiff. Because Defendants' records are inaccurate and/or inadequate, Plaintiff can meet their burden under the FLSA by proving that they, in fact, performed work for which they were improperly compensated, and produce sufficient evidence to show the amount and extent of their work "as a matter of a just and reasonable inference." *See e.g., Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). Plaintiff seek to put Defendant on notice that they intend to rely on *Anderson* to provide the extent of their unpaid work.

V.     **CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**FAILURE TO PAY MINIMUM WAGE PURSUANT TO THE FLSA, 29 U.S.C. § 206**

62.     Plaintiff hereby incorporate by reference and re-allege each and every allegation set forth in the paragraphs above as though fully set forth herein.

63. Defendants are engaged in "commerce" and/or in the production of "goods" for "commerce" as those terms are defined in the FLSA.

64. Defendants operate an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), because they have employees engaged in commerce, and because its annual gross volume of sales made is more than five hundred thousand U.S. Dollars ($500,000).

65. Defendants failed to pay Plaintiff the minimum wage in violation of 29 U.S.C. § 206.

66. Defendants' requirement that Plaintiff pay fees, fines and tipouts to the Club and its staff violated the "free and clear" requirement of 29 C.F.R. § 531.35, which also caused Defendants to fail to mee the minimum wage in violation of 29 U.S.C. § 206.

67. Based upon the conduct alleged herein, Defendants knowingly, intentionally, and willfully violated the FLSA by not paying Plaintiff the minimum wage under the FLSA.

68. Throughout the relevant period of this lawsuit, there is no evidence that Defendants' conduct that gave rise to this action was in good faith and based on reasonable grounds. In fact, Defendants continued to violate the FLSA long after it learned that its misclassification scheme and compensation policies were illegal.

69. Due to Defendants' FLSA violations, Plaintiff are entitled to recover minimum wage compensation and all fees, fines and forced tip sharing that Defendants required Plaintiff to pay in order to work at Visions, as well as an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest, pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
### Unlawful Taking of Tips in Violation of the FLSA, 29 U.S.C. § 203

70. Plaintiff hereby incorporates by reference and re-allege each and every allegation set forth in the paragraphs above as though fully set forth herein.

71. At all relevant times, Defendants were the "employer" of Plaintiff within the meaning of the FLSA, 29 U.S.C. § 203(d).

72. Defendants are engaged in "commerce" and/or in the production of "goods" for "commerce" as those terms are defined in the FLSA.

73. Defendants operate an enterprise engaged in commerce within the meaning for the FLSA, 29 U.S.C. § 203(s)(1), because they have employees engaged in commerce, and because its annual gross volume of sales made is more than five hundred thousand U.S. Dollars ($500,000).

74. Under TIPA:

> [a]n employer may not keep tips received by its employees for any purpose including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not it takes a tip credit.

29 U.S.C. § 203.

75. Defendants kept a portion of tips paid to Plaintiff by Defendants' customers in the form of fees, fines, mandatory charges, and other payments to management, house moms, disc jockeys, and floor men in violation of TIPA.

76. Defendants required Plaintiff to participate in an illegal tip pool, which included employees who do not customarily and regularly receive tips, and do not have more than a *de minimis*, if any, interaction with customers leaving the tips (such as the Club DJs and management). *See* U.S. Dep't of Labor, Wage and Hour Division, "Fact Sheet # 15: Tipped employees under the Fair Labor Standards Act (FLSA)."

77. Defendants also required Plaintiff to pay monetary fees and fines to the Club and its staff, in violation of 29 U.S.C. § 203(m), because the only form of compensation Plaintiff received from their work was tips, which they then had to payout to the Club.

78. Defendants' requirement that Plaintiff pay fees to Defendants and other Club employees violated the "free and clear" requirement of 29 C.F.R. § 531.35, dipping their wages below that required by 29 U.S.C. § 206, as well as 29 U.S.C. § 203(m).

79. Because Defendants took Plaintiff's tips, pursuant to 29 U.S.C. § 203(m)(2)(B), Defendants were not entitled to utilize the FLSA's tip-credit provision with respect to Plaintiff's wages.

80. The contribution Defendants required Plaintiff to make after each shift was arbitrary and capricious and the distribution was not agreed to by Plaintiff or other dancers; but rather, was imposed upon Plaintiff and other dancers. Plaintiff did not voluntarily tip other Visions employees and managers, but rather were forced and/or coerced to do so because Defendants imposed consequences affecting Plaintiff's employment for failure to tip by Defendants, including but not limited to termination.

81. By requiring Plaintiff to pay out their tips to club management and other employees, Defendants "retained" a portion of the tips received by Plaintiff in violation of the FLSA.

82. Defendants did not make any effort, let alone a "good faith" effort, to comply with the FLSA as it relates to compensation owed to Plaintiff.

83. At the time of its illegal conduct, Defendants knew or showed reckless disregard that the forced tips which Defendants required Plaintiff to contribute included non-tipped employees and, therefore, was statutorily illegal. Despite this, Defendants willfully failed and

refused to allow Plaintiff to keep the tips to which they were entitled

84. Defendants' willful failure and refusal to pay Plaintiff the tips they earned violates the FLSA.

85. Further, in each purchase, Visions would take 20% of Plaintiff's tips when customers used credit cards as their method of payments. The amounts charged by Visions were above the costs associated with credit card use and would decrease the amount of tips received by Plaintiff from the customer if a credit card was utilized.

86. As such, Defendants improperly and willfully offset credit tips to recover costs that exceed the direct fees charged by the credit card companies in direct violation to FLSA §203(m)(2). Defendants knowingly and willfully charged Plaintiff these costs over a business decision, rather than as a fee directly attributable to its cost of dealing in credit.

87. On an aggregate basis, Defendants' expenses for collecting and distributing credit card tips to cash, including both credit card issuer fees and expenses for cash-delivery services, always exceeded the offset amount. As such, Defendants improperly and willfully deducted more than the legal costs required by law when making such collections and directly violated FLSA §203(m)(2).

88. As a result of the acts and omissions of the Defendants as alleged herein, and pursuant to 29 U.S.C. §§ 216(b) and 260, Plaintiff are entitled to damages in the form of all misappropriated tips, "tip-credits," and fees charged—including house fees—as illegal kickbacks, plus interest; and as liquated damages, an amount equal to all misappropriated tips, "tip-credits," illegal kickbacks, mandatory attorneys' fees, costs, and expenses.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests of this Court the following relief:

1. For actual damages according to proof at trial;

2. For special damages according to proof at trial;

3. For liquidated damages;

4. For attorneys' fees;

5. For costs of suit incurred herein;

6. For pre-judgment interest;

7. For post-judgement interest; and

8. For such other and further relief as the tribunal may deem just and proper.


Dated: May 26, 2023

*/s/ Jarrett L. Ellzey*
Jarrett L. Ellzey
Texas Bar No. 24040864
Leigh Montgomery
Texas Bar No. 24052214
**ELLZEY & ASSOCIATES, PLLC**
1105 Milford Street
Houston, Texas 77066
Telephone: (713) 554-2377
Fax: (888) 995-3335
*jarrett@ellzeylaw.com*
*leigh@ellzeylaw.com*

***Attorneys for Plaintiff***